## THE BELLE.

### THE TRANSFER NO. 5.

#### (District Court, E. D. New York. June 5, 1901.)

TOWAGE—LIABILITY OF TUG FOR INJURY OF TOW—STRIKING DRAWBRIDGE.

A tug held in fault and liable for an injury to a schooner by striking against the abutment of a bridge while the tug was towing her through the draw.

In Admiralty. Suit against tug for injury to tow.

Hyland & Zabriskie, for libelant.

Alexander & Ash (Peter Alexander, of counsel), for the Belle.

Strong & Cadwalader (Henry W. Taft, of counsel), for Transfer No. 5.

THOMAS, District Judge. About 9:30 o'clock on the morning of July 6, 1900, the tug Belle attempted to tow the three-masted schooner John R. Fell, whose length and breadth were, respectively, 131 and 34 feet, at about high water, in clear and quiet weather, through a draw of the Willis Avenue Bridge. The schooner had lain headed upstream alongside of the bulkhead on the easterly side of the Harlem river, about midway between the Second Avenue and the Willis Avenue Bridges. From this position she was carried forward and upstream by the Belle, made fast on her starboard side, so that the schooner projected some 60 or 70 feet ahead of the bow of the tug, until the schooner's stern cleared two outlying boats, the schooner Hasbrouck and steam tug Transfer No. 5, when the tug swung the schooner's stern into the river, towed her stern first, and, as she claims, and respondents dispute, soon straightened her down in such a manner that she would have passed safely through the easterly draw, had it not been for the fact that when within 50 feet of the upper end of the abutment the tow took a sudden sheer to starboard, and came in collision with the abutment, doing the damage for which this libel is filed. Upon the facts thus stated, the Belle is liable. But, upon her application, Tug No. 5, which was taking coal at the coal pocket on the easterly side of the river, was brought in upon an allegation that the sudden sheer was caused by the quick water made by No. 5. The evidence most favorable to the Belle is that No. 5 was at the time of the sheer headed up the river, with her stern about 10 feet off from the dock, although it is the contention and evidence of No. 5 that she was then headed down the river, but that shortly before she had been heading up the river, and had changed sides for the purpose of loading. In any case the deflection of the schooner did not occur when No. 5 was winding around from the first to the second position. After hearing the evidence wherein it was stated by the witnesses of the Belle that the No. 5's quick water did cause the sheer, and by the witnesses of No. 5 that it did not and could not, the court directed a practical test to be made. The reports of the test as observed by the different parties are conflicting, but the burden is upon the Belle to show that the negligence of No. 5 was the cause of the accident. The evidence does not show preponderatingly that the quick water

could or did extend effectively the distance of at least 125 feet, the distance between the port side of the tug and the stern of No. 5, so as to strike the tug or tow with such force as to sheer the schooner to the westward a distance of 50 feet or over while going forward about the same distance. Even this assumes that the No. 5 was heading upstream at the time, and the distances and position are. most favorable to the Belle. The wheel of the Belle was in charge of an unlicensed deckhand, of a few years' experience as deckhand and cook, who was at the time of the trial only 21 years old, and whose knowledge of navigation appeared somewhat confused. He was acting under the directions of the pilot, who was on the stern of the schooner, 70 or 80 feet away. It is stated in behalf of the Belle that she blew alarm signals to No. 5 when 100 feet from the abutment, and although the steward hailed No. 5 when the sheer began,' and it was observed that no one on No. 5 looked towards the Belle, and the action of No. 5 continued, the wheel of the Belle was not even starboarded to guard against the quick water until it struck the tow 50 feet off the abutment, nor was anything whatever done to guard against the danger now alleged to have been threatened by No. 5. This indicates either that those in charge of the Belle did not regard the quick water as a serious disturbance of the waterway, or were negligent in guarding against it, and that those on No. 5 were unconscious of any act on their part injurious to navigation. After reading the evidence taken on the trial, and the evidence respecting the test since had, the conclusion is reached that the collision was due to a culpable miscalculation by those in charge of the Belle, and not to any negligent act of No. 5. The libelant should have a decree against the Belle alone, and the libel is dismissed as to Transfer No. 5, with costs against the Belle.